

**SO ORDERED.**

**SIGNED this 4 day of June, 2012.**

_____
**James D. Walker, Jr.
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 11-10758-JDW |
| REGINALD S. DANIEL and | ) | |
| PHYLLIS H. DANIEL, | ) | |
| | ) | |
| DEBTORS. | ) | |
| | ) | |
| TRANSMONTAIGNE PRODUCT | ) | ADVERSARY PROCEEDING |
| SERVICES, INC., | ) | NO. 11-1040 |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| REGINALD S. DANIEL and | ) | |
| PHYLLIS H. DANIEL, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Plaintiff:  Mark D. Lefkow
235 Peachtree Street, N.E., Suite 1500
Atlanta, Georgia 30303

For Debtors:  Wesley J. Boyer
355 Cotton Avenue
Macon, Georgia 31201

**MEMORANDUM OPINION**

This matter comes before the Court on TransMontaigne Product Services, Inc.'s motion for summary judgment on its complaint to determine the dischargeability of a debt. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

Debtor-Defendants Reginald and Phyllis Daniel owned and operated multiple businesses related to the purchase and resale of petroleum products, including Danfair Oil, which they started in 1992 as a fuel supply company. Plaintiff TransMontaigne Product Services, Inc. began supplying petroleum products to Danfair Oil in February 2001. In November 2010, Danfair Oil failed to pay Plaintiff for fuel deliveries made in October 2010. As a result, Danfair Oil owed Plaintiff an aggregate of $647,916.48, which was personally guaranteed by Debtors.

Debtors filed a Chapter 7 petition on May 19, 2011, and listed Plaintiff as an unsecured creditor with a debt in the amount of $647,916.48. Debtors received a discharge on November 8, 2011. Plaintiff filed a complaint to determine the dischargeability of its debt, alleging defalcation in a fiduciary capacity under 11 U.S.C. § 523(a)(4), willful and malicious injury under § 523(a)(6), and actual fraud under § 523(a)(2)(A). It now seeks summary judgment solely on the issue of fiduciary defalcation. According to Plaintiff, Debtors had a fiduciary duty to manage the assets of Danfair Oil for creditors when the company became insolvent. Rather than doing so, Debtors transferred the assets of Danfair Oil to Danfair Transport. They then closed Danfair Oil

in November 2010, but continued its operations under the name of Danfair Transport.

## Conclusions of Law

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(a) provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court views all evidence and reasonable factual inferences in the light most favorable to the nonmoving party. Burton v. Tampa Housing Auth., 271 F.3d 1274, 1277 (11th Cir. 2001).

Plaintiff contends its debt is nondischargeable under 11 U.S.C. § 523(a)(4), which provides that a Chapter 7 discharge "does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity[.]" Exceptions to discharge are construed liberally in favor of the debtor. Equitable Bank v. Miller (In re Miller), 39 F.3d 301, 304 (11th Cir. 1994). As the objecting party, Plaintiff has the burden to prove each element of its claim. Id. To prevail on its summary judgment motion, Plaintiff must establish (1) the existence of Debtors' fiduciary capacity; and (2) conduct by Debtors rising to the level of defalcation. General Produce, Inc. v. Tucker (In re Tucker), No. 06-50092, Adv. No. 06-5107, 2007 WL 1100482, at *2 (Bankr. M.D. Ga. April 10, 2007).

In Quaif v. Johnson, 4 F.3d 950 (11th Cir. 1993), the Eleventh Circuit adopted a narrow definition of fiduciary capacity in the context of § 523(a)(4). It pointed out that the "Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts." Id. at 953 (citing Chapman v. Forsyth, 43 U.S. 202 (1844); Upshur v. Briscoe, 138 U.S. 365, 11 S. Ct. 313 (1891); Davis v. Aetna Acceptance

4

Co., 293 U.S. 328, 55 S. Ct. 151 (1934)). For purposes of § 523(a)(4), a technical trust includes voluntary express trusts. Id. at 953. Additionally, trusts created by statute may impose fiduciary duties–such as segregation of funds and accounting for funds–that are "sufficient to create a 'technical' trust." Id. at 954. Constructive and resulting trusts, which are imposed to remedy some wrongdoing by the debtor, fall outside the scope of technical trusts. Id. at 953. If the trust qualifies as a technical trust, the Plaintiff must also show that "the trust relationship ... existed prior to the act which created the debt[.]" Id. (citing Angelle v. Reed (Matter of Angelle), 610 F.2d 1335 (5th Cir. 1980)) (emphasis added); see also Guerra v. Fernandez-Rocha (In re Fernandez-Rocha), 451 F.3d 813, 816 (11th Cir. 2006); Davis, 293 U.S. at 333, 55 S. Ct. at 154.

Plaintiff cites Smith Drug Co. v. Pharr-Luke (In re Pharr-Luke), 259 B.R. 426 (Bankr. S.D. Ga. 2000), for the proposition that fiduciary capacity may be established by common law as well as by statute. The common law at issue in Pharr-Luke provides that "managing officers of a corporation are charged with the duty of conserving and managing the remaining assets in trust for the creditors when the corporation becomes insolvent." Id. at 430 (citing Ware v. Rankin, 97 Ga. App. 837, 838, 104 S.E.2d 555, 558 (Ga. Ct. App. 1958)). The court found that this insolvency trust created "an express fiduciary duty imposed by law" and that it "predate[d] the act giving rise to the indebtedness at issue." Id. at 431. Thus, the trust was sufficient to create fiduciary capacity for purposes of § 523(a)(4). Id.

Assuming, without deciding, that the insolvency trust described in Pharr-Luke creates the type of trust that gives rise to fiduciary capacity under § 523(a)(4), Plaintiff must demonstrate that "the trust relationship ... existed prior to the act which created the debt." Quaif, 4 F.3d at 953. In other words, the insolvency of Danfair Oil which gives rise to the trust on corporate

assets must have preceded the creation of Plaintiff's debt.

Plaintiff's statement of facts does not directly address the date its debt arose. However, the statement does describe the timing of Plaintiff's last transaction with Danfair Oil. Plaintiff delivered oil to Danfair Oil in October 2010, and Danfair Oil stopped paying for those deliveries in November 2010. (Plaintiff's Statement of Material Fact as to Which There Is No Genuine Dispute, ¶ 3, docket no. 28.) From these facts, which Debtors do not dispute, the Court can infer that Plaintiff's debt arose when it delivered product to Danfair Oil in October 2010.

As to fiduciary capacity, Plaintiff must show Danfair Oil became insolvent prior to the acts giving rise to the debt. The common law rule creating the insolvency trust at issue does not define "insolvency." However, related areas of Georgia law recognize two tests for insolvency: (1) equitable insolvency, by which a corporation fails to pay its debts as they come due; and (2) balance sheet insolvency, by which a corporation's liabilities exceed its assets. See O.C.G.A. § 14-2-640(c) (2003) (barring a corporation from making distributions to shareholders if the distributions will result in either equitable or balance sheet insolvency); O.C.G.A. § 18-2-72(a), (b) (2010) (defining insolvency as either balance sheet insolvency or equitable insolvency for purposes of fraudulent transfer law).

Plaintiff's statement of facts addresses only equitable insolvency, pointing to two possible time frames for when the insolvency arose. Both time frames are disputed by Debtors. In paragraph 16 of its statement of facts, Plaintiff states that, according to corporate records, Danfair Oil was not paying debts as they came due as of mid-2010. Plaintiff cites to the transcript of Mr. Daniel's 2004 examination to support its claim, as follows:

> Q.     I'd like to show you what has been marked as Exhibit 32.

|   |   |
|---|---|
|   | What is Exhibit 32? |
| A. | Unpaid Bills Detail. |
| Q. | For Danfair Oil Company, Inc., dated June 30th, 2010; correct? |
| A. | Yes, sir. |
| Q. | And what was the purpose of preparing this Unpaid Bills Detail? |
| A. | I do not know. |
| Q. | And Exhibit 32, was that record made and kept in the ordinary course of Danfair Oil Company, Incorporated's business? |
| A. | Yes, sir. |
| Q. | And was it a regular business practice to keep records such as Exhibit 32? |
| A. | Yes, sir. |
| Q. | Was it specifically a regular business practice of Danfair Oil Company, Inc.? |
| A. | Yes, sir. |
| Q. | And were the entries made within Exhibit 32 made by a person or persons with knowledge of the entries made therein? |
| A. | Yes, sir. |
| Q. | And were the entries within Exhibit 32 made at or within a reasonable time of the events which are recorded in Exhibit 32? |
| A. | Yes, sir. |
| Q. | In case I didn't ask you, was Exhibit 32 made and kept in the ordinary course of Danfair Oil Company, Inc.'s business? |
| A. | Yes, sir. |

(Plaintiff's Statement of Undisputed Facts, docket no. 28, exhibit 2, Reginald Daniel 2004 examination, p. 169:3 to 170:8.) This testimony establishes only that Danfair Oil created a document titled "Unpaid Bills Detail" on June 30, 2010, and that it is a business record. It offers no information about the content of the document, and the Court was unable to locate a copy of the document among the documents Plaintiff filed to support its motion for summary judgment. Assuming the document contains a list of Danfair Oil's unpaid bills or accounts payable as of

June 30, 2010, the testimony does not indicate that the bills were past due at the time the document was created or that they were ultimately paid late. Thus, the testimony does not demonstrate Danfair Oil was equitably insolvent as of mid-2010.

In paragraphs 15 and 45 of its statement of facts, Plaintiff states that Danfair Oil was equitably insolvent on November 1, 2010. Debtors agree that Danfair Oil was unable to pay Plaintiff in November 2010, but they dispute use of the specific date November 1.[1] Plaintiff relies on Mr. Daniel's 2004 examination and his deposition to support its assertion of insolvency. In Mr. Daniel's 2004 examination, he testified as follows:

> Q. And up until November of 2010, Danfair Oil Company, Inc., was continuing to do business?
> A. Correct.
> ...
> Q. Well, what makes you say November?
> A. Because this is when TransMontaigne demanded that we pay, and we didn't have the money and we had to cease. We could not buy product.
> Q. Danfair Oil didn't have the money; right?
> A. Right.

(Plaintiff's Statement of Undisputed Facts, docket no. 28, exhibit 2, Reginald Daniel 2004 examination, p. 91:10 to 91:12, 91:18 to 91:23.) In his deposition, Mr. Daniels testified as follows:

> Q. As of November 2010, was it your decision that Danfair Oil Company could not pay certain creditors, including [Plaintiff]?
> A. Yes, sir.
> Q. You understood as of November 2010, Danfair Oil Company could not pay its debts as they came due; is that correct?

---

[1] Debtors contend Danfair Oil made two payments to Plaintiff in early November 2010–a payment of $67,558.24 on November 1, 2010, and payment of $87,522.83 on November 4, 2010.

    A.    When? I'm sorry.
    Q.    As of November 2010.
    A.    Correct.

(Plaintiff's Statement of Undisputed Facts, docket no. 28, exhibit 18, Reginald Daniel adversary deposition, p. 20:23 to 21:7.) These excerpts support a finding that at some point in November 2010–but not necessarily on November 1, 2010–Danfair Oil became equitably insolvent.

Plaintiff's statement of facts contains no facts relating to the status of Danfair Oil's assets and liabilities. However, in its reply brief, Plaintiff cites to Mr. Daniel's 2004 examination for evidence of balance sheet insolvency:

    Q.    And you state that Danfair Oil Company, the liabilities exceed assets?
    A.    Yes, sir.
    Q.    And the same thing for Danfair Transport and Danfair Properties; correct?
    A.    Correct.
    Q.    How did you calculate that the liabilities exceed assets for those three companies?
    A.    I look at the value of the property and with what's owed, with all of the back taxes that's owed and those kinds of things, and it's upside down.
    Q.    Okay. How long has it– How long have these three companies been upside down?
    A.    I don't– I'm not sure.
    Q.    Were they upside down in 2010?
    A.    Probably not. No, sir, I don't think so.
    Q.    Were they upside down in 2009?
    A.    No, sir.
    Q.    Were they upside down January of 2011?
    A.    Absolutely. Probably so.
    Q.    Were they upside down on December 31st, 2010?
    A.    Danfair Oil absolutely was. Transport, I'm not sure. And I'm not sure about Property– And I would say Properties was.

(Plaintiff's Statement of Undisputed Facts, docket no. 28, exhibit 2, Reginald Daniel 2004

examination, p. 49:15 to 50:14.) This testimony establishes Danfair Oil's balance sheet insolvency as of December 31, 2010.

Based on the supported facts, Danfair Oil became equitably insolvent some time in November 2010, and was balance sheet insolvent by December 31, 2010. Thus, any common-law insolvency trust imposed on Debtors did not arise until November 2010, at the earliest. Plaintiff's debt was incurred in October 2010. For purposes of § 523(a)(4), fiduciary capacity requires the trust relationship to predate the acts giving rise to the debt. In this case, the debt arose first.[2] Therefore, Plaintiff has failed to establish fiduciary capacity, and the Court need go no further to conclude Plaintiff is not entitled to summary judgment.

Nevertheless, the Court notes that the timing of the trust will also be relevant to proving the element of defalcation. Plaintiff spent a considerable portion of its brief discussing asset transfers made by Danfair Oil to other businesses owned by Debtors prior to closing Danfair Oil. According to Plaintiff, the transfers constitute defalcation. As explained by the Eleventh Circuit in Bullock v. BankChampaign (In re Bullock), 670 F.3d 1160 (11th Cir. 2012), "defalcation requires a known breach of a fiduciary duty, such that the conduct can be characterized as objectively reckless." Id. at 1166. In other words, the transfers cannot be acts of defalcation unless they occurred after the fiduciary capacity arose.

Based on the foregoing, to succeed at trial Plaintiff must persuade the Court that the insolvency trust discussed in Pharr-Luke meets the standards necessary to establish fiduciary

---

[2] As noted earlier in this Opinion, the Court has inferred the date the debt was incurred based on limited information provided in the Plaintiff's statement of material facts. This inference does not preclude Plaintiff from proving at trial that its debt arose on a different date.

capacity for purposes of § 523(a)(4)[3]; Plaintiff must prove that the trust arose prior to the acts giving rise to Plaintiff's debt; and Plaintiff must prove that the trust arose prior to any acts constituting defalcation.

## Conclusion

To prevail on a claim for defalcation in a fiduciary capacity under 11 U.S.C. § 523(a)(4), Plaintiff must prove both the existence of fiduciary capacity and acts of defalcation. Fiduciary capacity arises under a narrow category of technical trusts and must preexist the acts giving rise to the debt. In this case, Plaintiff's debt arose in October 2010. The trust arose a month later in November 2010. Based on these facts, Plaintiff has failed to establish the existence of fiduciary capacity and is not entitled to judgment as a matter of law. Therefore, the Court will deny Plaintiff's motion for summary judgment.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT

---

[3] In Tucker, this Court said, "Statutory trusts are not per se technical trusts. The court must look to the trust attributes and requirements imposed by the statute to determine whether it falls within the scope of § 523(a)(4)." 2007 WL 1100482, at *2. The same scrutiny applies to trusts created by common law.